UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

CIVIL ACTION NO. 07-85-JBC

DONNIE R. HELTON,                                                            PLAINTIFF,

V.                    **MEMORANDUM OPINION AND ORDER**

MICHAEL J. ASTRUE, COMMISSIONER,
SOCIAL SECURITY ADMINISTRATION,                                  DEFENDANT.

\* \* \* \* \* \* \* \* \* \*

This matter is before the court upon cross-motions for summary judgment on the plaintiff's appeal of the Commissioner's denial of his application for Disability Insurance Benefits ("DIB") (DE 7, 8). The court, having reviewed the record and being otherwise sufficiently advised, will deny the plaintiff's motion and grant the defendant's motion.

**I.   Overview of the Process**

Judicial review of the decision of an Administrative Law Judge ("ALJ") to deny disability benefits is limited to determining whether there is substantial evidence to support the denial decision and whether the Secretary properly applied relevant legal standards. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 402 U.S. 389 (1971)). "Substantial evidence" is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as

1

adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The court does not try the case *de novo* or resolve conflicts in the evidence; it also does not decide questions of credibility. *See id.* Rather, the ALJ's decision must be affirmed if it is supported by substantial evidence, even though the court might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. At Step 1, the ALJ considers whether the claimant is performing substantial gainful activity; at Step 2, the ALJ determines whether one or more of the claimant's impairments are "severe"; at Step 3, the ALJ analyzes whether the claimant's impairments, singly or in combination, meet or equal a listing in the Listing of Impairments; at Step 4, the ALJ determines whether the claimant can perform past relevant work; and finally, at Step 5 – the step at which the burden of proof shifts to the Commissioner – the ALJ determines, once it is established that the claimant cannot perform past relevant work, whether significant numbers of other jobs exist in the national economy which the claimant can perform. *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 404.1520.

**II. The ALJ's Determination**

At the time of the alleged disability onset date, the plaintiff was a forty-two-year-old male with a high-school education and prior work experience as a wire processor. AR 19, 113, 118. He alleges disability beginning on May 16, 2000,

due to left wrist pain, knee pain, back pain, coronary artery disease, diabetes, vertigo and depression. AR 19. The plaintiff filed his claim for Disability Insurance Benefits ("DIB") on August 14, 2000, which was denied initially and on reconsideration. AR 18. After hearings held on September 6, 2002, and June 9, 2004, Administrative Law Judge ("ALJ") Joan A. Lawrence determined that the claimant was not disabled within the meaning of the Social Security Act. AR 18. At Step 1, the ALJ determined that the claimant has not engaged in substantial gainful activity since his alleged onset date. AR 19. At Step 2, the ALJ found that the claimant's degenerative joint disease, discogenerative and discogenic disorders of the back, diabetes mellitus, coronary artery disease status post bypass grafting, hypertension, carpal tunnel syndrome, and complaints of dizziness/vertigo were severe impairments. AR 20. At Step 3, the ALJ determined that the claimant's impairments did not meet or medically equal a listing in the Listing of Impairments. AR 20. At Step 4, the ALJ found the claimant unable to perform his past relevant work. AR 27. At Step 5, the ALJ determined that with the claimant's residual functional capacity he can perform jobs that exist in a significant number in the national economy, and the ALJ therefore denied the claimant's claims for DIB. AR 25, 26. On February 5, 2007, the Appeals Council denied the claimant's request for review of the ALJ's decision, see AR 9, and the claimant then commenced this action.

**III. Legal Analysis**

The claimant argues that the ALJ did not give proper weight to the opinion of Mr. Helton's treating physician, Dr. Perry, who stated that the claimant is disabled and unable to work. AR 253-255, 294. An ALJ must give the opinion of a treating source controlling weight if she finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). If a medical opinion of a treating physician is not contradicted, it is entitled to complete deference. *Cohen v. Sec'y of Dept. of Health and Human Servs*, 964 F.2d 524, 528 (6th Cir. 1992). If the opinion of a treating source is not accorded controlling weight, the ALJ must consider factors such as the length of the treatment relationship and frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and specialization of the source in determining the weight to give the opinion. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). An ALJ may, however, reject the opinion of a treating physician when that opinion is not sufficiently supported by medical findings, but she must give good reasons for the weight assigned to the treating source's opinions. 20 C.F.R. § 404.1527(d)(2); *Wilson*, 378 F.3d at 544. Further, the opinion of a consulting physician is not entitled to the deference due the opinion of a treating physician. *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

The claimant's treating physician, Dr. Truman Perry, has treated the claimant since September 10, 1999.  AR 316.  In a letter dated March 12, 2001, Dr. Perry stated that the claimant's medical problems place limitations on his abilities and that, in his opinion, Mr. Helton is not suitable for gainful employment and should therefore be found permanently disabled.  AR 255.[1]  However, an opinion that the claimant is disabled is not a medical opinion; instead, it is a legal conclusion reserved to the commissioner because it is a finding that is dispositive of a case. 20 C.F.R. §§ 404.1527(e), 416.927(e).

Further, the ALJ's opinion addresses precisely how Dr. Perry's treatment records are not supported by the testimony of additional medical experts or the vocational expert.  When substantial medical evidence exists to the contrary, the ALJ is not bound by the treating physician's opinion.  *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993).  In addition to the various experts contradicting Dr. Perry's assessment, his conclusions are inconsistent with the medical evidence in the record.  An ALJ may reject the opinion of a treating physician when that opinion is not sufficiently supported by medical findings.  *Walters v. Comm'r*, 127 F.3d 525, 530 (6th Cir. 1997).

---

[1] Dr. Perry opines that the claimant is unable to kneel, bend or crawl.  AR 255. Further, Dr. Perry states that Mr. Helton cannot walk for greater than 10 to 15 minutes and has stiffness and soreness in his left knee when sitting for more than 10 to 15 minutes.  AR 255.  Dr. Perry also found that Mr. Helton has lost some sensation in his left hand along with a decrease in musculature ability.  AR 255. Accompanied by intermittent vertigo, these conditions persuaded Dr. Perry that Mr. Helton is permanently disabled.  AR 255.

5

A review of the record indicates that the ALJ had substantial evidence to refute the findings of the treating physician, Dr. Perry.  With regard to Mr. Helton's back and leg complaints, the claimant argues that an MRI performed by Dr. Steven Kiefer showed disc degeneration and a suggestion of a central and left paracentral L5-S1 focal disc protrusion that would likely cause left S1 nerve root compression. AR 290.  Dr. Kiefer noted that the claimant had normal station and gait, which is inconsistent with Dr. Perry's findings, but agreed with Dr. Perry regarding the presence of diffuse degenerative disc disease, and probable left L5 radiculopathy. AR 291-292.  Dr. Kiefer's recommendation to the claimant for a follow-up visit and for physical therapy was not followed, according to the record.

Dr. Michael Jones's examination of the claimant is also inconsistent with the findings of Dr. Perry.  Dr. Jones noted that Helton had been diagnosed with coronary artery disease, hypertension, hyperlipidemia, diabetes mellitus, and atypical chest pain.  AR 332.  However, he found that the claimant's musculoskeletal exam showed no bony abnormalities and that he had no edema in his extremities.  *Id.*  An EKG showed normal sinus rhythm and no ST-T abnormalities.  *Id.*  In a letter to Dr. Perry, Dr. Jones stated that the claimant's symptoms of chest pain suggested a musculoskeletal etiology.  AR 328.  Dr. Jones further opined a need for an Adenowalk Cardiolite stress test to elicit any evidence of ischemic coronary artery disease, but Mr. Helton did not have the test, according to the record.  AR 332, 328.  In contrast, Dr. Perry found Mr. Helton's most

disabling impairment to be his coronary artery disease.  AR 316.  Dr. Perry noted that Mr. Helton complained of chest wall pain and sweats after his coronary artery bypass graft of four vessels; however no further tests were performed on Mr. Helton.  AR 254.

The claimant argues that his wrist problem would not allow him to find work and that the record supports that disability.  However, Dr. Mark Carter found no muscular wasting of the upper extremities and found that Helton's left wrist had normal strength and range of motion, no muscle wasting, and no evidence of impaired function.  AR 160-61.  Dr. Carter also found that the claimant had no abnormal movements of his hands or upper extremities.  AR 161-62.  Additionally, Dr. Stephen Lamb noted that Helton had neither difficulty dressing and undressing nor muscle atrophy, and that his forearms were equal in circumference.  AR 298.  He also found that Helton could move about the examination room freely and was able to descend and ascend the examination table without difficulty.  *Id.*  Other than a moderate restriction in tolerance for bending, Dr. Lamb found no other significant limitations in Helton's ability to perform activities such as reaching, handling, lifting, and carrying.  AR 298.  In addition, the claimant's gait and station were unremarkable and his gross manipulation was normal, according to Dr. Lamb.  AR 297-99.

Dr. Perry opined that Helton cannot sit or stand for more than 10- to 15-minute increments.  AR 255.  Dr. Perry also found Helton unable to kneel, bend or

crawl. AR 255. The ALJ has adopted some of Dr. Perry's findings showing the same functional limitations, but the ALJ determined that Helton is not completely disabled. In forming the claimant's RFC, the ALJ agreed with part of Dr. Perry's findings by limiting the claimant to work with a sit/stand option every 10 to 15 minutes except for work requiring climbing or kneeling. AR 23. However, Helton's own testimony contradicts some of Dr. Perry's findings, as the ALJ properly concluded. The claimant stated at the hearing, and in his discussions with Dr. Eggerman, that he can drive by himself. AR 249, 412. Further, Helton stated that his hobbies include hunting and that he is able to shoot a gun. AR 250.

The ALJ is not required to give complete deference to the treating physician's opinion unless there is no evidence to refute such opinion. 20 C.F.R. § 404.1527(d)(2); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Multiple medical experts examined Helton and deemed him capable of work. The inconsistencies between Dr. Perry's findings and the rest of the medical record support the ALJ's decision not to give controlling weight to the treating physician's opinion. Substantial evidence underlay the ALJ's denial of disability benefits. Thus, the court finds that substantial evidence exists to support the ALJ's decision to reject Dr. Perry's assessment of Helton.

The claimant additionally argues that the vocational expert ("VE") testified there would be no work for Helton when presented with a hypothetical from the ALJ that asked the VE to "assume that the individual does not have sensation in his

left hand as he described it here today." AR 429-30.  An ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact.  *Casey v. Sec'y of Health and Human* Serv's, 987 F.2d 1230, 1235 (6th Cir. 1993).  The evaluations by Drs. Carter and Lamb regarding the claimant's left wrist and hand motion, and the ALJ's findings, indicate that the hypothetical in question would not be relevant to Helton.  The relevant hypotheticals posed by the ALJ were indicative that the claimant may still perform work, and the VE testified that multiple jobs existed that the claimant could perform, not only in the national economy, but in the claimant's regional economy.  AR 428.  The ALJ properly posed and relied upon hypotheticals that incorporated the limitations she accepted as credible in finding that the claimant was not disabled.

**IV.  Conclusion**

Accordingly,

**IT IS ORDERED** that the Commissioner's motion for summary judgment (DE 8) is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for summary judgment (DE 7) is **DENIED**.

Signed on September 25, 2008 

JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

10